IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                    No. CR 01-M-541

DAMON C. MING and
IBRAHIM MOHAMED NWAGUI,

        Defendants.

## **FINDINGS OF FACT**

THIS MATTER is before the Court on a preliminary hearing. After consideration of the evidence, the Court finds clear and convincing evidence as follows:

1. On October 21, 2001, Special Agent David Tyree, with the Drug Enforcement Administration, was working drug interdiction at the Amtrak train station in Albuquerque, New Mexico.

2. He reviewed ticket pouches for passengers and noted that a ticket was purchased by Defendant Damon C. Ming, with cash, for one-way travel between Los Angeles and Chicago. The ticket was purchased minutes from the actual departure time.

3. While purchasing a one-way ticket with cash on the day of travel is not an illegal act, DEA Agent Tyree testified that these factors can be consistent with drug courier activities.

4. Agent Tyree did not know who Defendant Ming was, and was engaging in numerous consensual interviews with the Train #4's passengers. As he approached the observation car, he saw two individuals, subsequently identified as Defendants Ming and Nwagui, talking to each other.

5. Agent Tyree approached Defendant Ming and asked permission to speak with him, and Ming consented.

6. Agent Tyree asked Ming if he was traveling with the individual with whom he was speaking, later identified as Defendant Ibrahim Mohamed Nwagui. Defendant Ming denied that they were traveling together.

7. After explaining his identity as a DEA officer on drug interdiction, Special Agent Tyree asked for Ming's identification and train ticket. Ming made several contradictory statements about his travel plans. Thereafter, Agent Tyree asked Ming if he had luggage and Ming indicated he did, and led Agent Tyree to the adjoining coach car.

8. In the coach car, Ming pointed out as his various pieces of luggage in an overhead compartment, and Agent Tyree then asked Ming for consent to search. Ming consented.

9. After receiving Ming's consent, Agent Tyree removed the luggage from the rack to commence his search when a passenger in an adjoining seat stated that the luggage was not Ming's, but his own.

10. Special Agent Tyree then asked Ming to explain why he had misidentified the other passenger's luggage as his, and Ming walked to the back of the coach and identified a small toiletry bag in an overhead rack as his. The toiletry bag was next to four larger suitcases.

11. Special Agent Tyree asked Ming if the four bags were his, and Ming advised they were his.

12. Agent Tyree sought permission to search the large bags and Ming refused. Agent Tyree then sought to obtain permission to have a trained drug dog sniff the luggage. To determine if a

canine dog was available, Agent Tyree directed Ming to be seated while Tyree consulted with DEA Special Agent Kevin Small.

13. As Agent Tyree was speaking to Agent Small, Ming fled the coach car, leaving all luggage behind, and refused to stop on Agent Tyree's orders. A foot chase ensued and, ultimately, Ming was apprehended.

14. During the time that Ming was being pursued, Defendant Nwagui came into the coach car and told passengers that he was an undercover federal agent. From the coach car, he observed the foot chase of Defendant Ming. When Ming was apprehended, Nwagui hid in another train car.

15. After Defendant Ming was apprehended, Ming was advised of his Miranda rights. Ming made inculpatory statements to the effect that he and co-Defendant Nwagui were transporting marijuana.

16. DEA agents removed Ming's bags from the care and had a trained drug-sniffing dog, "Susie," sniff the bags. The dog alerted to the four bags. Subsequently, DEA agents obtained a federal search warrant for the bags, and a search of the bags resulted in the seizure of marijuana from each of the bags. One-hundred thirty pounds of a substance, which field tested positive for marijuana, was seized from the bags.

17. After Defendant Ming advised law enforcement officers that he was traveling with Nwagui, agents began searching the train for him.

18. Nwagui hid himself in a train attendant's compartment, where he was ultimately apprehended. Nwagui was not ticketed to ride in the train attendant's compartment.

19. Special Agent Tyree determined that Nwagui, too, had purchased a one-way ticket with cash right at the time of the trains's scheduled departure.

3

20. Nwagui, too, was advised of his constitutional rights, and after the advisement, made inculpatory statements, indicating that he and Defendant Ming were paid for the transportation of the marijuana.

21. Defendant Nwagui made inculpatory statements concerning his knowledge of marijuana inside the bags.

Based on the foregoing, the Court finds clear and convincing evidence demonstrating probable cause to believe that the Defendants, Damon C. Ming and Ibrahim Mohamed Nwagui, did conspire to possess with the intent to distribute marijuana; and probable cause to accuse the Defendants of the commission of that crime.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge